IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SONNY DUCKWORTH,<br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION,<br>Defendant. | §<br>§<br>§<br>§   CIVIL ACTION NO. 4:22-CV-14-P<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Sonny Lee Duckworth ("Duckworth") filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In January 2018 Duckworth protectively applied for DIB, alleging that his disability began on December 9, 2016. (Transcript ("Tr.") 121, 291-95.) Duckworth's application was both denied initially and on reconsideration. (Tr. 121, 143-47, 155-58.) Duckworth then requested a hearing before an administrative law judge ("ALJ"). (Tr. 121, 159-60.) On November 20, 2019, the ALJ held a hearing, and, on December 10, 2019, the ALJ issued a decision finding that Duckworth was not disabled within the meaning of the SSA. (Tr. 67-87,

1

118-36.) Duckworth then filed a request for review of the ALJ's decision to the Appeals Council. (Tr. 218-20.) On June 1, 2020, the Appeals Council granted Duckworth's request for review and vacated and remanded Duckworth's claims for further administrative proceedings. (Tr. 137-40.)

Based on the order of remand, the ALJ held another hearing on February 25, 2021. (Tr. 12; *see* Tr. 32-66.) On April 14, 2021, the ALJ issued another decision finding that Duckworth was not disabled within the meaning of the SSA. (Tr. 9-25.) Duckworth then filed a request for review of this decision to the Appeals Council. (Tr. 289-91.) On November 5, 2021, the Appeals Council denied Duckworth's request, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1;

20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

3

long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Duckworth presents the following issues:

1. Whether the ALJ erred at Step Two in not finding that Duckworth's impairment of essential tremor was severe; and

2. Whether the ALJ improperly substituted his own medical opinion in determining the Plaintiff's RFC.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 14-25.)

### IV. ALJ DECISION

In a decision dated April 14, 2021, the ALJ concluded that Duckworth was not disabled within the meaning of the SSA. (Tr. 12-25.) At Step One, the ALJ found that Duckworth had not engaged in substantial gainful activity during the period from his alleged onset date of December 9, 2016 through his date last insured of September 30, 2021. (Tr. 15.) At Step Two, the ALJ found that Duckworth had the following severe impairments: major depressive disorder, anxiety disorder, intermittent explosive disorder, bipolar disorder, lumbar spondylosis, cervical spondylosis, and lateral epicondylitis. (Tr. 15.) Next, at Step Three, the ALJ determined that Duckworth did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 15-18.) As to Duckworth's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

4

CFR [§] 404.1567(b) except he is limited to standing or walking four hours in an eight-hour workday. He is limited to occasional climbing of ramps and stairs, frequent balancing, occasional stopping, kneeling, crouching, or crawling, and never climbing ladders, ropes, or scaffolds. He is limited to frequent handling and fingering bilaterally, and frequent reaching in all direction bilaterally. He is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions. He is limited to occasional contact with supervisors, coworkers, and the public. He can tolerate only occasional changes in the work setting.

(Tr. 18 (emphasis omitted); see Tr. 18-24.)

At Step Four, the ALJ found that Duckworth was unable to perform any of his past relevant work. (Tr. 24.) Subsequently, at Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Duckworth could perform based on his age, education, work experience, and RFC. (Tr. 24-25.) Accordingly, the ALJ found that Duckworth was not disabled as defined in the SSA from December 9, 2016 through the date of the decision. (Tr. 25.)

## V. DISCUSSION

### A. Step Two and Essential Tremor

The first issue is whether the ALJ erred at Step Two in failing to find Duckworth's impairment of an essential tremor as severe. (Pl.'s Br. at 14-19.) In his brief, Duckworth claims that the "ALJ acknowledged that in March of 2020 Duckworth underwent a neurological evaluation due to tremors." (Pl.'s Br. at 15; see Tr. 20.) In addition, Duckworth points to several places in the record showing that Duckworth was experiencing or had been diagnosed with an essential tremor and his own testimony regarding the effects of the tremor on his ability to eat and drink. (Pl.'s Br. at 15-16.) Duckworth further states:

> Duckworth's diagnosis of essential tremor is verified by clinical and laboratory diagnostic techniques, including orthopedic examination by Dr. Teter, and neurological examination by Dr. Sapkota with nerve conduction testing. The medical evidence of record clearly establishes that Duckworth suffers from the medically determinable impairment of essential tremor. The ALJ, however failed

5

> to determine whether Duckworth's medically determinable impairment of essential tremor constitutes a severe impairment.
>
> . . . .
>
> Although the ALJ proceeded beyond step two of the sequential evaluation process, his error in failing to determine if Duckworth's essential tremor constitutes a severe impairment is not harmless. A step two error is harmless when the ALJ proceeds beyond step two of the sequential evaluation process and considers the "limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe."
>
> . . . .
>
> In determining Duckworth's RFC, the ALJ considered the effects of Duckworth's recognized medically determinable impairments upon his ability to work, and concluded that Duckworth is limited to frequent handling and fingering bilaterally, and frequent reaching in all directions bilaterally. However, such limitations are based upon the ALJ's evaluation of the effect of Duckworth's "neck, lower back, and right elbow pain." The ALJ did not consider the effect of Duckworth's essential tremor on his ability to handle, finger, feel, or reach. It is significant that the ALJ determined that Duckworth is limited to frequent handling, fingering, and reaching bilaterally based upon the effect of his neck, lower back, and right elbow pain alone. If the ALJ had further considered the effect of Duckworth's essential tremor, which Duckworth testified significantly affected his ability to perform simple activities such as drinking water from a glass or using utensils to eat, it is not inconceivable that the ALJ may have found greater restriction, which would have changed the RFC finding and led to a different decision.

(Pl.'s Br. at 16-19 (citations omitted).)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe

6

only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added); *see Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2001 (reaffirming *Stone*).

In this case, as set forth above, the ALJ found that Duckworth had the severe impairments of "major depressive disorder, anxiety disorder, intermittent explosive disorder, bipolar disorder, lumbar spondylosis, cervical spondylosis, [and] lateral epicondylitis." (Tr. 15.) While the ALJ did not find Duckworth's essential tremor to severe at Step Two, the ALJ did note that, at the February 2021 hearing, Duckworth complained of "constant shaking of his hands" and that Duckworth was "seen by neurology in March of 2020 regarding tremors, and prescribed propranolol and Topamax." (Tr. 19-20.)

Even assuming without deciding that the ALJ should have found that Duckworth's essential tremor was a severe impairment at Step Two, the ALJ, in the RFC determination, specifically included limitations to account for Duckworth's hand tremors by limiting Duckworth to frequent handling and fingering bilaterally and frequent reaching in all directions bilaterally. (Tr. 18.) As to this limitation, the ALJ stated, "He is limited to frequent handling and fingering bilaterally, and frequent reaching in all directions bilaterally due to cervical radiculopathy and complaints of shaking in his hands." (Tr. 21.) Consequently, any error the ALJ committed relating to Duckworth's essential tremor impairment at Step Two was harmless. *See Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) ("But assuming *arguendo* that the ALJ erred by not finding based on [a doctor's] diagnoses that [the claimant's] impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis."); *Gibbons v. Colvin*, No. 3:12-CV-0427-BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar.

30, 2013) (holding that error under *Stone v. Heckler* potentially causing ALJ not to recognize certain impairments as severe at Step Two was harmless because ALJ considered the impairments in the RFC); *Reliford v. Colvin,* No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis."). Moreover, Duckworth has not presented any non-conclusory or non-speculative evidence showing how his essential tremor impacted his ability to work in a manner not already accounted for in the ALJ's RFC determination.[2] *See, e.g., McDaniel v. Colvin,* No. 4:13-CV-989-O, 2015 WL 1169919, at *4-5 (N.D. Tex. Mar. 13, 2015) (stating that the claimant "does not point to any evidence in the record indicating that her alleged obesity or hearing loss caused any work-related limitations beyond those already found by the ALJ in his RFC determination"); *Lewis v. U.S. Comm'r Soc. Sec. Admin.,* No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ). Because the evidence indicates that the ALJ was aware of Duckworth's essential tremor impairment and properly accounted for such impairment in the RFC determination, any error is harmless and remand is not required.

---

[2] Duckworth argues that the ALJ limited Duckworth to frequent handling and fingering bilaterally and frequent reaching in all direction bilaterally "based upon the ALJ's evaluation of the effect of Duckworth's 'neck, lower back, and right elbow pain.'" (Pl.'s Br. at 18.) The Court disagrees as the ALJ specifically stated that Duckworth "is limited to frequent handling and fingering bilaterally, and frequent reaching in all directions bilaterally due to cervical radiculopathy **and complaints of shaking in his hands.**" (Tr. 21 (emphasis added).)

8

### B.   RFC Determination

In his brief, Duckworth next argues that the ALJ erred by improperly substituting his own opinion for that of the medical opinion evidence of record in making the RFC determination. (Pl.'s Br. at 19-25.) Specifically, Duckworth, after citing to *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), states:

> The ALJ in *McNett* [*v. Comm'r Social Security Administration*, No. 4:20-CV-01200-P, 2021 WL 4848932, at *5 (N.D. Tex. Sept. 27, 2021), *rec. adopted*, 2021 WL 4845776 (N.D. Tex. Oct. 18, 2021] recognized that the State agency medical consultants ["SAMCs")] could not account for recent testing results that showed a worsening of McNett's carpal tunnel syndrome. 2021 WL 4848932, at *5. Similarly, in this case the ALJ found that "diagnostic imaging" taken after the State agency medical consultants rendered their assessments showed "worsening" of Duckworth's cervical spine condition. The ALJ concluded that such recent diagnostic imaging established "greater" postural and manipulative limitations than found by the State agency medical consultants (Tr. 23). However, what the updated evidence does not clearly show, as was the case with the updated evidence in *McNett*, was the effect Duckworth's worsening condition has on his ability to work. *Id.* Rather, in determining the functional effect [of] Duckworth's worsening cervical condition, the ALJ relied upon his lay interpretation of the medical data and his "own lay opinion." *Id.* . . . Consequently, the ALJ's decision is not supported by substantial evidence because he made the physical RFC assessment regarding postural and manipulative limitations without a medical opinion addressing the effects of Duckworth's worsening physical impairments on his ability to work. *Id.*
>
> In determining Duckworth's mental RFC, the ALJ recognized that the evidence of record establishes Duckworth has limitations in the complexity of tasks he can perform, interacting with others, and in dealing with work pressures; i.e., "is limited to performing simple, routine, and repetitive tasks and making simple work-related decisions," "is limited to occasional contact with supervisors, coworkers, and the public," and "can tolerate only occasional changes in the work setting" (Tr. 18, Finding No. 5). The ALJ found unpersuasive the State agency psychological consultants' functional assessments because "treatment notes reflect persistent deficits with ongoing mental health treatment, including irritability and anxiety" that support greater limitations (Tr. 22-23). However, the ALJ then also rejected the opinions of Dr. Spoor and APRNs Gregg and Garrison that addressed Duckworth's greater limitations in interacting with others and dealing with work pressures (Tr. 23). Without support from medical expert evidence that clearly establishes the effect of Duckworth's major depressive disorder, anxiety disorder, intermittent explosive disorder, and bipolar disorder on his ability to interact with others and deal with work pressures, the ALJ then determined the extent of

9

> Duckworth's limitations based upon his lay interpretation of the medical data and his own lay opinion. The ALJ acknowledged that the medical evidence of record establishes that Duckworth has "difficulties with concentration and mental functioning" and has "social limitations and observed irritability" that affect his ability to interact with others and deal with work pressures (Tr. 22), but the ALJ cited to no medical expert evidence that clearly establishes limitations consistent with his mental RFC finding. Consequently, the ALJ's mental RFC finding is not supported by substantial evidence without medical expert evidence that clearly addresses the effect of Duckworth's "persistent deficits with ongoing mental health treatment, including irritability and anxiety" in a manner consistent with the ALJ's mental RFC finding.

(Pl.'s Br. at 21-22.)

RFC is what an individual can still do despite his limitations.[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

### 1. Physical RFC Determination

As to Duckworth's physical RFC determination, the ALJ, as set forth above, found that Duckworth had the RFC to perform light work, except that he is limited to: (1) standing or walking four hours in an eight-hour workday; (2) occasional climbing of ramps and stairs; (3) frequent

balancing; (4) occasional stooping, kneeling, crouching, or crawling; (5) never climbing ladders, ropes or scaffolds; and (6) frequent handling and fingering bilaterally and reaching in all directions bilaterally. (Tr. 18.) In making the physical RFC determination, the ALJ analyzed, *inter alia*, the diagnostic tests, treatment notes and records from several doctors, including a chiropractor and Anil Kesani, M.D. as well as Duckworth's physical therapy records and Duckworth's own testimony. (Tr. 18-21.) In addition, the ALJ stated:

> Medical records do not support the degree of physical functional limitations alleged. Diagnostic imaging shows only mild lumbar disc degeneration. Records indicate that treatment with injections, radiofrequency ablation, and medical branch blocks are effective. Examinations in the record reflect tenderness to his neck and back with joint pain and muscle spasms, but a normal gait and station, 5/5 strength, infrequent complaints of radiating pain, and negative straight leg raising testing. To account for neck, lower back, and right elbow pain with intermittent restrictions in range of motion, the undersigned finds the claimant is limited to light work with standing or walking four hours in an eight-hour workday, occasional climbing of ramps and stairs, frequent balancing, occasional stooping, kneeling, crouching, or crawling, and never climbing ladders, ropes, or scaffolds. He is limited to frequent handling and fingering bilaterally, and frequent reaching in all directions bilaterally due to cervical radiculopathy and complaints of shaking in his hands.
>
> . . . .
>
> State agency consultant Scott Spoor, M.D., opined the claimant could perform work at the light exertional level with occasional climbing of ramps and stairs, as well as ladders, ropes, or scaffolds. Betty Santiago, M.D. ["SAMC Santiago"], largely concurred with Dr. Spoor, but found the claimant has additional postural limitations to occasionally stooping and crouching, and frequently balancing, kneeling, and crawling. The undersigned finds a limitation to light work persuasive, but finds that additional limitations are warranted by evidence at the hearing level. Their review of the evidence noted mild lumbar and mild to moderate cervical diagnostic imaging, a restricted lumbar range of motion, a negative straight leg raise test, and reported well controlled pain, supporting their opinions. More recent diagnostic imaging shows some worsening of the cervical spine, consistent with greater postural limitations, and limitations to frequent reaching, handling and fingering bilaterally.

(Tr. 21, 23 (internal citations omitted).)

Duckworth, citing to *Ripley and McNett, supra,* and other similar cases, argues that, in essence, the ALJ erroneously added in manipulative limitations to the SAMC's prior RFC assessments based on additional evidence in the record dated after the SAMC's provided their opinions. (Pl.'s Br. at 19-25.) Duckworth claims that the ALJ erred because the ALJ, in essence, did not have any medical or other evidence as the basis for adding such manipulative limitations into the physical RFC determination. (*Id.*)

In *Ripley,* the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[5] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.[6] *Id.* at 557– 58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). In this case, differing from the facts in *Ripley* in which the "only evidence regarding Ripley's ability to work came from Ripley's

---

[5] "The evidence that was available for review by the ALJ shows a four[-]year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

[6] "While *Ripley* itself remains precedent, its emphasis on treating physicians' opinions no longer holds sway." *Vasquez v. Comm'r of Soc. Sec.,* No. 7:21-cv-00028-BP, 2022 WL 2975471, at *4 (June 30, 2022) (citing *Webster v. Kijakazi,* 19 F.4th 715, 718-19 (5th Cir. 2021) (discussing 20 C.F.R. §404.1520c)).

13

own testimony," the RFC opinions from the SAMCs clearly assess at least some of the effects of Duckworth's functional physical impairments on his ability to perform work. *Ripley*, 67 F.3d at 557. In fact, the ALJ relies, at least in part, on the RFC opinion of SAMC Santiago in formulating the physical RFC determination as SAMC Santiago (like the ALJ) opined that Duckworth was capable of light work[7] and was limited to occasional climbing of ramps and stairs and occasional stooping and crouching.[8] (Tr. 18, 23, 111-12).

The ALJ, however, included in Duckworth's RFC determination several more stringent postural limitations than found by SAMC Santiago and added in new manipulative limitations not found by SAMC Santiago to account for "[m]ore recent diagnostic imaging show[ing] some worsening of the cervical spine" and Duckworth's "complaints of shaking in his hands." (Tr. 21, 23.) The problem, however, with including the new manipulative limitations (when the SAMCs found no manipulative limitations) is that there is no medical opinion supporting which work tasks Duckworth could perform with his hands despite the worsening severe back impairment or the impairment associated with his shaking hands. *See Silves H. v. Kijakazi*, No. 3:22-cv-286-K-BN, 2022 WL 17345924, at *4 (N.D. Tex. Nov. 14, 2022) ("Since the ALJ implicitly rejected the

---

[7] "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Furthermore, according to SSR 83-10, "frequent lifting or carrying of objects weighing up to 10 pounds ... requires being on one's feet up to two-thirds of a workday," that is, "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1938 WL 31251, at * (S.S.A. Jan. 1, 1983).

[8] The ALJ also further restricted Duckworth's ability to perform the full range of light work by limiting him to standing or walking four hours in an eight-hour workday. (Tr. 18.)

14

SAMCs' opinions [that found no limitations on handling, fingering, or feeling] by finding that Plaintiff had manipulative limitations, there are no medical opinions concerning Plaintiff's ability to handle and finger during an eight-hour workday[] [a]nd the undersigned cannot determine whether the ALJ's RFC finding concerning Plaintiff's handling and fingering limitations is otherwise supported by substantial evidence in the record because the ALJ does not identify medical or other evidence as the basis for her finding.") As a result, the ALJ appears to have been playing the role of doctor "for which [he is] generally ill-equipped." *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *2-5 (N.D. Tex. Oct. 19, 2021). Consequently, the Court concludes that the Commissioner's final decision is not supported by substantial evidence because the ALJ made the physical RFC assessment regarding Duckworth's manipulative limitations without a medical opinion addressing the effects of Plaintiff's worsening physical impairments on his ability to work. *See McNett*, 2021 WL 4848932, at *5. Specifically, the ALJ erred in performing his duty to develop the facts fully and fairly and obtain a report from a qualified medical expert explaining how Duckworth's worsening condition affected his ability to work, resulting in limitations to his ability to reach, handle, and finger. *See, e.g., Bratu v. Comm'r of Soc. Sec.*, No. 22-cv-0079-O-BP, 2022 WL 5264512, at *4-7 (N.D. Tex. Set. 19, 2022); *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *2-5 (N.D. Tex. Oct. 19, 2021).

However, the existence of this error does not automatically result in reversal of the Commissioner's decision. *See Bratu*, 2022 WL 5264512, at *6. "Procedural perfection in administrative proceedings is not required," and a court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). "The touchstone for assessing prejudice is whether errors 'cast into doubt the

existence of substantial evidence to support the ALJ's decision.'" *Bratu*, 2022 WL 5264512, at *6 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). In this case, the absence of a medical opinion addressing Duckworth's manipulative limitations casts doubt on the ALJ's decision; consequently, remand is required. *See Bratu*, 2022 WL 5264512, at *6; *McNett*, 2021 WL 4848932, at *6.

### 2. Mental RFC Determination

In his brief, Duckworth also argues that the ALJ erred by improperly substituting the ALJ's own opinion for that of the medical opinion evidence of record in making the mental RFC determination. However, because the undersigned is recommending that the case be reversed and remanded so that the ALJ can reevaluate his physical RFC determination, the Court will not consider this issue. Instead, the ALJ, upon remand, should also ensure that the mental RFC determination is supported by substantial evidence and that the ALJ does not improperly substitute his own opinion for that of the medical opinion evidence of record.

### RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings, conclusions, and recommendation.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de

novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 16, 2023** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 2, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv